UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DECEDRIC GIRON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-09-1943 |
| | § | |
| TEXAS WEST OAKS HOSPITAL, LP, *et al*, | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER**

Pending before the Court is Defendants Texas West Oaks Hospital, LP, d/b/a West Oaks Hospital and Texas Hospital Holdings, LLC, f/k/a PSI Texas Hospitals' Motion for Summary Judgment.  (Doc. 22.)  Upon review and consideration of Defendants' motion, the relevant legal authority, and for the reasons explained below, the Court finds that the motion should be granted.

I.  Background and Relevant Facts

This is an employment discrimination case.  Plaintiff Decedric Giron ("Giron") is an African American man.  (Doc. 1, ¶ 7.)  On or about July 14, 2008, Giron was hired by Texas West Oaks Hospital as a mental health worker.  (*Id.*)  Giron alleges that he was sexually harassed by two female supervisors, Angela O'Neal ("O'Neal"), a charge nurse, and Kathy Cook ("Cook"), a supervisor.  (*Id.*)  The alleged harassment took the form of unwanted advances and offensive remarks regarding Giron's private body parts.  (*Id.*, ¶ 8.).  Giron acknowledges that his relationship with Cook turned sexual after he called her to bail him out of jail in early October 2008.  (Doc. 22. at 8; Doc. 22-1 at 12–13.)

On December 23, 2008, Giron filed a Charge of Discrimination against Texas West Oaks Hospital with the Texas Workforce Commission Civil Rights Division.  (Doc. 1, ¶ 13; Doc. 22-1 at 94.)  Giron's charge reads:

I.  On July 14, 2008, I was hired by Respondent as a Mental Health
Worker.  Starting in or about mid-September 2008, I was sexually
harassed by Ms. Angela LNU, Charge Nurse, and Ms. Kathy Cook,
Supervisor.  Ms. Angela LNU made numerous offensive remarks
regarding my private body part.  At about the same time, Ms. Cook
began to invite me to her house and out to dinner.  In order to save my
job, I became sexually involved with her.  When she began to pursue a
more intimate relationship with me, I began to avoid her.  This angered
her and caused her to retaliate against me.  On November 14, 2008, I
was required to work with patient who has a contagious disease.
Because I had not been given the proper immunizations, I requested
Ms. Angela and Ms. Cook to assign me to another post.  They denied
my request and told me to go home.  I was later suspended for two
days with pay pending for investigation.  Upon my return to work on
November 18, 2008, I was given a final warning [for] allegedly not
accepting an assignment and tardiness.  I reported this situation to Ms.
Janice Webster, Human Resources.  I informed Ms. Webster that I
believed I was being retaliated against for opposing Ms. Angela
LNU's advances.  On December 22, 2008, I met with Ms. Webster and
Ms. Sherri James (Chief Nursing Advisor) regarding this situation.
They changed my last disciplinary action into two write-ups.

II.  I believe I have been harassed because of my gender (male), and being
retaliated against for opposing unlawful sexual harassment, in
violation of Title VII of the Civil Rights Act of 1964, as amended.

(*Id.*)  Giron alleges that in retaliation for filing this charge of discrimination his "work

environment became even more hostile towards him, and the terms and conditions of his

employment became even more adverse."  (Doc. 1, ¶ 13.)  On or about February 3, 2009, Giron

was fired.  (*Id.*, ¶ 15.)  On that same date, Giron amended his Charge of Discrimination to

include an allegation of retaliation for filing the original charge.  (Doc. 22-1 at 95–96.)

Defendants contend that Giron and his supervisor, Kathy Cook, had a month-long,

consensual sexual relationship in 2008.   (Doc. 22 at 1.)   Unrelated to that relationship,

Defendants argue that Giron was disciplined for his poor attendance and refusal to do his job.

(*Id.*)  Defendants further assert that in response to this discipline, Giron reported that another

employee, Angela O'Neal, who worked in a different unit, sexually harassed him.  (*Id.*)  Giron

later claimed his sexual relationship with Cook was not consensual.  (*Id.*)  In response, Cook "denied that the relationship was anything other than consensual, acknowledged that she had not exercised good judgment by having a relationship with a subordinate, and resigned her employment." (*Id.* at 2.)  Cook resigned on January 9, 2009.  (Doc. 23-5.)  On January 18, 2009, Giron sent her a text message reading, "Have a good week i love u."  (Doc. 22 at 2; Doc. 22-1 at 87.)  Defendants argue that Giron was terminated "after his attendance problems—for which he had been coached and counseled prior to his complaints—continued unabated."  (Doc. 22 at 2.)

On June 22, 2009, Plaintiff Giron filed suit against Defendants for discrimination, sexual harassment, hostile work environment, and retaliation, all in violation of Title VII of the Civil Rights Acts of 1964 and 1991, as amended, 42 U.S.C. § 2000e, *et seq.*  (Doc. 1.)  On October 28, 2010, Defendants moved for summary judgment.  (Doc. 22.)  Despite the Court's order of January 11, 2011, Plaintiff never responded to the motion.  (Doc. 24.)

II.  Summary Judgment Standard

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  If the moving party fails to meet its initial burden, the motion must be denied, regardless

of the adequacy of any response.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor.  *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, however, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 323–24.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).  Instead, the nonmoving party must produce evidence upon which a jury could reasonably base a verdict in its favor.  *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).  To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial."  W*ebb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998) (overruled on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2414 (2006)).  Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence.  *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*,

102 F.3d 137, 139–40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992).  Nor are pleadings summary judgment evidence.  *Wallace v. Tex. Tech Univ*., 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075).  The nonmovant cannot discharge his burden by offering vague allegations and legal conclusions.  *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990).  Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment.  *Ragas v. Tennessee Gas Pipeline Co*., 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party.  *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198–200 (5th Cir. 1988).  The nonmoving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue.  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).  There is a "genuine" issue of material fact if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

III.  Discussion

It is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

A.  EEOC Charge

As a preliminary matter, Defendant Texas Hospital Holdings, LLC, f/k/a PSI Texas Hospitals must be dismissed for failure to exhaust administrative remedies.  *Barnes v. Levitt*, 118 F.3d 404, 408 (5th Cir. 1995); *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995); 42 U.S.C. § 2000e-5(f)(1).  Giron did not name Texas Hospital Holdings in his Charge of Discrimination. (Doc. 22-1 at 94.)  Failure to exhaust administrative remedies is fatal to a Title VII claim.  *See Nat'l Ass'n of Gov't Employees v. City Pub. Ser. Bd. of San Antonio*, 40 F.3d 698, 711 (5th Cir. 1994); *Tolbert v. U.S.*, 916 F.2d 245, 247–48 (5th Cir. 1990); *Johnson v. Bergland*, 614 F.2d 415, 417 (5th Cir. 1980).

B.  Coworker Sexual Harassment

To establish a *prima facie* case of sexually hostile work environment with regard to a coworker, Plaintiff must show that he (1) was a member of a protected class; (2) was subject to unwelcome sexual harassment; (3) the harassment was based on his sex; (4) the harassment affected a "term, condition, or privilege" of employment; and (5) his employer knew or should have known of the harassment and failed to take prompt remedial action.  *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 298–99 (5th Cir. 2001).  Proof of the final element is not required where the alleged harasser is the employee's supervisor.  *LeMaire v. Louisiana Dept. of Transp. and Development*, 480 F.3d 383, 393 n.3 (citing *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir.1999)).  Sexual harassment affects a term or condition of employment only when it is objectively and subjectively offensive, based on the totality of the circumstances.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–23 (1993).  In determining whether a work environment

meets this standard, courts evaluate several factors, including "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating as opposed to a mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether the complained of conduct undermines the plaintiff's workplace competence." *Hockman v. Westward Communications, LLC.*, 407 F.3d 317, 325–26 (5th Cir. 2004) (internal citations omitted).   Summary judgment for the employer is appropriate unless the employee establishes that that alleged harassment is "so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace." *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 974 (5th Cir. 1999).   "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (internal citation omitted).

Giron claims that Ms. O'Neal made several inappropriate comments over the course of seven months, which included statements like "your penis is big," talk of a "rendezvous," and an invitation to a "passion party."   (Doc. 22-1 at 40–44.)   However, these allegations fall well below the threshold of what is actionable.   Giron does not complain that he felt threatened or humiliated by these statements, or that they interfered with this work performance or competence in any way and therefore fails to establish a *prima facie* case of hostile work environment sexual harassment with regards to Ms. O'Neal.

C.  Supervisor Sexual Harassment

Giron next claims that his supervisor, Ms. Cook, sexually harassed him.   Such claims are analyzed under both the *quid pro quo* and hostile work environment theories of sexual harassment.   *Casiano v. AT&T Corp.*, 213 F.3d 278, 283–84 (5th Cir. 2000).   Under the *quid pro*

*quo* theory, Giron must show that a "tangible employment action suffered by the employee resulted from his acceptance or rejection of his supervisor's alleged sexual harassment." *Id.* "If the employee cannot show such a nexus, then his employer is not vicariously liable under Title VII for sexual harassment by a supervisor . . . ." *Id.* It is undisputed that Ms. Cook was Giron's supervisor and that Giron was terminated. (Doc. 22 at 16–17.) Giron, however, did not submit any evidence showing a connection between his relationship with Ms. Cook in October and November of 2008 and his termination in February 2009. Ms. Cook was suspended on December 30, 2008, and subsequently resigned on January 9, 2009, well before Giron's termination. (*Id.* at 17; Doc. 23-5.) See, *Moayadi v. Compaw Computer Corp.*, 98 Fed. Appx. 335, 337–38 (5th Cir. 2004) (finding that an employee cannot establish a viable claim of *quid pro quo* harassment when the alleged harasser does not participate in the adverse employment action).

Although the parties dispute whether the Plaintiff's sexual relationship with his supervisor, Ms. Cook, was consensual, the Court must assume, for the purpose of deciding the Defendant's motion for summary judgment, that it was not. Nevertheless, Defendant Texas West Oaks Hospital asserts the affirmative defense that it took prompt and effective remedial action. This affirmative defense is available to an employer when a supervisor's alleged sexual harassment does not result in a tangible employment action against the employee. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 764–65 (1998); *Faragher*, 524 U.S. at 807. "The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or the avoid harm otherwise." *Ellerth*, 524 U.S. at 765.

Texas West Oaks Hospital provided evidence that it "took prompt action against the alleged harasser by suspending her the next day (her first scheduled shift after West Oaks received the report) after she admitted having a relationship with Plaintiff, a subordinate." (Doc. 22 at 19; Doc. 23 ¶ 19.)  *Sanders v. Casa View Baptist Church*, 134 F.3d 331, 335–38 (5th Cir. 1998) (affirming summary judgment in favor of the employer where the supervisor resigned shortly after the plaintiffs reported the alleged harassment and there was no evidence that the employer knew about the alleged harassment before the employees complained).  Texas West Oaks Hospital further showed that Giron "failed to take advantage of West Oaks' complaint policy to report his allegedly non-consensual relationship with Ms. Cook." (Doc. 22 at 18–19; Doc. 23-1.)  Giron did not rebut this summary judgment evidence and therefore his claim of sexual harassment by his supervisor, under both *quid pro quo* and hostile work environment theories, must be dismissed.

D.  Discrimination

To establish a *prima facie* case of sex discrimination, Giron must show the following: (1) he was a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside the protected class, or similarly-situated employees outside the protected class were more favorably treated.  See *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir.1999).  Giron does not provide evidence that he was replaced by someone outside his protected class (male) or identify any similarly situated employee outside the protected class who was treated more favorably.  Giron therefore fails to establish a *prima facie* case of sex discrimination.

E.  Retaliation

9 / 10

To state a *prima facie* case of retaliation, a plaintiff must prove (1) he engaged in protected activity; (2) his employer subjected him to an adverse employment action, and (3) a causal connection between his protected activity and the adverse action.  *Banks v. East Baton Rouge Parish School Bd.*, 320 F.3d 570, 575 (5th Cir. 2003).  If the plaintiff makes a *prima facie* case of retaliation, the burden then shifts to the employer to articulate a legitimate non-retaliatory reason for the adverse employment action.  *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).  Finally, the burden then shifts back to the plaintiff to show that the articulated reason is pretextual.  *Id.*  To show pretext, the plaintiff "must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates."  *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001).  Assuming, arguendo, that Giron is able to make a *prima facie* case of retaliation, he still fails to rebut his employer's proffered non-retaliatory reason for his dismissal, namely that he was terminated for arriving to "work late at least twenty-nine times in less than two months."  (Doc. 22 at 22; Doc. 22-1 at 35–36, 81; Doc 23, ¶ 8.)

IV.  Conclusion

Accordingly, the Court hereby **ORDERS** that Defendants Texas West Oaks Hospital, LP, d/b/a West Oaks Hospital and Texas Hospital Holdings, LLC, f/k/a PSI Texas Hospitals' Motion for Summary Judgment (Doc. 22) is **GRANTED**.

SIGNED at Houston, Texas, this 7th day of February, 2011.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE